Judge Gregory, may it please the court. My name is Kevin King. I'm here from Covington and Burling on behalf of the appellant Arnold Paul Burleson. I'd like to reserve five minutes for rebuttal. Mr. Burleson was convicted in 2013 of violating 18 U.S.C. 922 G1, the federal years in prison. That was a mandatory minimum sentence. We argue that the court should vacate Mr. Burleson's conviction and his 15-year sentence because both are directly contrary to and are invalid under 18 U.S.C. 921 A20, the definition provision which defines a crime punishable by more than one year in prison. Now, Section 921 A20, which I think for the sake of simplicity I'll call Section 921, it has a critical sentence or two in it which provides that if a defendant's civil rights were restored, a conviction does not count as a Section 922 predicate unless, and now I'm quoting, unless such restoration of civil rights expressly provides that the person may not possess firearms. Now, in this case, it is uncontested that Mr. Burleson's civil rights were restored in 1988 and that his right to possess firearms under state law was restored automatically in 1993. So we have a question, did such restoration expressly provide that Mr. Burleson may not possess firearms? The answer to that is no. There's a restoration certificate in this case, which you can see at Joint Appendix 120, and that says nothing about firearms. The North Carolina statutes, in effect, at the time of restoration, that is the laws that you see in the statutory appendix, which resulted in the restoration of Mr. Burleson's rights in 1988 and in 1993, they likewise said nothing restricting Mr. Burleson's right to possess firearms. Indeed, the United States in this case concedes at J116 and at pages 12 to 13 of its brief that beginning in 1993, Mr. Burleson was on the same footing as any other citizen. He was free to possess a firearm in his home abroad, to do whatever the law authorized a citizen to do with a firearm. So I think that really ought to be the end of the matter. Such restoration did not expressly provide that Mr. Burleson could not possess firearms. So the restoration that you're referring to now is the 1993 restoration? That's correct. The 1988 one was restricted. I think that's right, Your Honor. It was sort of a two-phase restoration of the kind, and there's a good discussion of how these two-phase restorations work in the Fifth Circuit's Osborne decision. But that's right. In 1988, by certificate and by law, he got back his right to vote, to serve on a jury, to hold office, those sorts of standard civil rights. And then there was a five-year waiting period with which he complied. He committed no further felonies. So by operation of law in 1993, he got back his right to possess firearms. Now, the government relies on a misunderstanding of a rule that this court has adopted, which says that in applying Section 921, the court needs to look to the entirety or the whole of state law. And that's true. The court has to look to the entirety of state law. But that has a very particular meaning, which we flesh out in our reply brief, and which you can find in the McLean case and a couple of the other cases of this court cited in the briefs, which is that when you're looking at whether a restoration expressly provides that the defendant may not possess firearms, the court said you look to the entirety of state law and not just to the certificate, where there is a certificate. You know, here again, at JA 120, there's a certificate that Mr. Burleson received. And there's a circuit split on that issue. Some circuits, the Seventh Circuit, have held that where there's a certificate, we're not going to look beyond the certificate. We're just going to focus on what that document says. And if it says nothing about firearms, the defendant wins. This court rejected that view in McLean, and it joined up with the Sixth Circuit and a few other circuits and said, no, when considering whether state law expressly provides, I'm sorry, such restoration expressly provides that the defendant may not possess firearms, we're going to look at the certificate and we're going to look at state law. But what the court did not do in McLean, and what the government does not address in its brief, is the timing of that inquiry, right? Do you look to the entirety of state law in 1993 when the restoration occurred? Or do you look to the entirety of state law today or at the time of arrest or at some other time period? McLean just does not speak that issue. But this court's decision in Haynes does. And, you know, Haynes said, and this is 961 Federal 2nd to 53, that when looking to the entirety of state law, Section 921 directs courts to view the law, I'm sorry, the whole of state law, quote, at the time the defendant's civil rights were restored. And the court went on in Haynes to say that subsequent enactment of legislation does not alter the Section 921 analysis. We think that Haynes, if it doesn't dispose of this case, basically gives the court the tools that it needs to dispose of the case. And moreover, we would note, the United States noted in the last argument that precedent from other circuits is persuasive authority. And here, there is a mountain of persuasive authority from other circuits. The 5th Circuit, the 9th Circuit, the 10th Circuit, the 8th Circuit, the 7th Circuit, all of them have adopted the timing rule that we're advocating for here. And they've done so in published decisions. All of them say that under Section 921, courts look to the law in effect at the time of the restoration. Now, I will acknowledge that at one point in the Melvin case, which the government relies on heavily, the 7th Circuit took a different approach. Melvin looked to the law in effect at the time of arrest. But in Adams, which was decided in 2012 after this court's most recent unpublished decision, Hairston, on the issue, Adams said, no, we're going to look at the law at the time of potential restoration. So, I think there's really no precedent anywhere for the opposite approach. There's a tremendous amount of precedent for the approach that we advocate for here. I would note, in addition, that this court's McQueen decision, which I think was about 10 years ago, it explained that under Section 921, courts apply a very simple and straightforward rule, right? Under Section 921, you look back and you I'm sorry. You look back since the defendant was last allowed to possess firearms and you count the number of convictions. Here, that number is zero, right? Mr. Burleson was last allowed to possess firearms under state law in 1993. He has zero convictions since then. Do you agree that, or what is your view, I suppose I should put it this way, what is your view as to the state of North Carolina's prerogative to prosecute him as a felon in possession? Certainly, North Carolina could have prosecuted him right from the outset, right? He was arrested. They still could. I'm not admitting Apart from any limitations issue. There certainly would be a limitations issue, Judge Gregory. Of Judge Davis. I'm sorry, Judge Davis. My apologies. We know there is a limitation issue, but I'm not admitted in North Carolina. We've looked briefly at the issues of North Carolina law. We know, Judge Davis, that there are two kinds of dismissal under state law. Dismissal with and without leave to reinstate. And if you take a look at JA-10, you'll see that the dismissal of the state law charges in this case was with the kind that was not with leave to reinstate. That may have some consequences. It may not. I see. Yeah. So consider judgment was made by the state and federal prosecutors that this should go forward in federal court. That's right. From what you've seen in the records. That's correct. I think there's even a text entry. If you look at JA-10, the order of dismissal from state court, there's a sentence or two in there explaining why the dismissal was made. And it says, you know, we're dismissing this case because Mr. Burleson was indicted in federal court. Federal court. Right. Yeah. So it is possible that Mr. Burleson could be charged in state court and could be tried if the limitations period hasn't run. I'd note this, though. I think it's really important. The sentencing range for this offense under state law would be, for Mr. Burleson, taking into account his criminal history, is 8 to 47 months, as we've calculated it. You'd see that on page 59 of our opening brief. The government hasn't challenged that. Mr. Burleson has been in custody on the federal charge since September of 2012. While he's been in custody, he was initially in custody for the state offense, and then he continued in custody for the state offense. So he's been in for 40 months, which is right up near the maximum for what he could have received had he been tried in state court. Even with his record. Even with his record. That's right. Now, North Carolina, if it wanted to, it could enact its own armed criminal act. It is elected not to do so. And I would be fairly narrow, right? You would not be opening the floodgates, because under the Caron decision at the Supreme Court, if you do not regain your firearm rights, therefore your rights are not restored under Section 921, and therefore the federal provision, Section 922G, would kick into effect for you. So for anybody who has a felony after 1995 in North Carolina, ruling in favor of Mr. Burleson in this case, we think, would be of no consequence. So it's going to be a small group, and it's going to be an old group, by and large, right? I mean, it's not a coincidence that your client is 72, is that right? Today he's 75 years old. Yeah, but he was 72 when he was arrested on the federal charge. That's correct, Judge Harris. Because it's going to have to be people who haven't had a conviction in 20 years, right? That's absolutely right. 20 plus years. Mr. Burleson's last felony was 1985, when the Soviet Union was our chief adversary. So it's been a while for him, and I think it would be a while for anybody who would be affected by a ruling in our favor. Can I just ask a question about sort of the connection between your reading of Section 921 and then actually getting relief for Mr. Burleson? Yeah. So there's the ineffective assistance claim, and then you also raise the infirmity and the plea and the due process violation, all sort of based around the same statutory argument. Are those second to you? Were those raised in the original habeas petition? Are they properly before us? So I think the answer to your question is yes. It requires a little bit of analysis. This was, of course, Mr. Burleson's pro se in the district court. He had the help of an inmate law clerk, but not the help of an admitted lawyer. And he cited and discussed at length the court's Essex decision, which says that a prior conviction for which the defendant's rights have not been restored is, quote, an essential element of a 922G offense. So certainly the second of the three arguments we present on appeal is adequately preserved. We would argue, although I acknowledge it's a closer call, that the third argument, the due process-based argument, is also preserved. If you look at the cases that Mr. Burleson cited in his 2255 petition, they're the same cases, in essence, that we rely on in our appellate briefs. I think we may have added one or two cases in that territory, but the same basic theory, which is that it's a violation of due process to convict somebody of a crime when they don't meet all the elements. He followed his notice of appeal pro se as well, right? That's correct, Your Honor. Do you have a problem there or a challenge there on preservation? I don't think so. His notice of appeal said he's appealing the judgment of the district court denying his 2255. And he filed an informal pro se brief in this court where he essentially re-argued all the same points as he did in the district court. So I think to the extent this was brought up in the district court, it maps onto what's properly before this court. I don't want to beat a dead horse here, but I'll just get into the grammar and stress the text of Section 921, which we think is so powerful for our case here. In referring to such restoration, it necessarily has to be the case that the law, in effect, at the time of restoration is what the court looks to for this expressly provides inquiry. As the Fifth Circuit pointed out in Osborne, it just cannot be the case that, quote, such restoration includes laws that had not been passed at the time the defendant regained his or her rights. And, you know, the grammar of the matter also under the Supreme Court's Barrett decision, the Supreme Court mentioned there that when Congress uses the present perfect tense here, has had civil rights restored, it denotes an act that has been completed. Here, that was completed in 1993. Judge Bernahan is smiling down on you, your mention of grammar. Judge Davis, I will not pretend to be a grammar expert, but I did spend a year clerking for a grammar expert and have come to appreciate it. Well, I think I'll reserve the rest of my time for rebuttal and just say that we ask this court to reverse the district court's decision denying the 2255 motion, to vacate the plea and the sentence, and to put Mr. Burleson back in the place he was before he pleaded guilty. Thank you, Mr. King. Mr. Hobbit. Yeah, please, court. It probably would be helpful if I first review the North Carolina Felony Firearms Act history very briefly. Prior to 1971, there really were no restrictions. In 1971, starting in 1971, a felon could possess a firearm. Generally, when his civil rights were restored, there are different variations of when that could happen. And it also resulted in a period in 1973 and 1974 where the restoration was almost immediate upon his discharge from prison. And in October of 1975, the General Assembly passed a law that is the primary law that appears in McLean and O'Neill and Clark and most of the cases that the court has considered in the past where the felon is barred for five years for possessing pistols after his restoration of civil rights and discharge from prison. And then in December of 1995, which is the act we're really concerned about here, they totally banned felons from possessing pistols outside of their home. They could still possess weapons at home. And they made that act retroactive specifically. And in December of 2004, they expanded that ban to cover all firearms no matter where located. And again, specifically made that statute retroactive. So Mr. Burleson's convictions occurred back in the 70s and 80s, and his firearms rights were restored in March of 1993, 33 months before North Carolina passed its 1995 act barring the kind of firearm he possessed later in 2012. So just to... Yes, sir. As of 93, had there been no change in North Carolina law, this prosecution... It was free and clear at that time for 33 months. Well, I say, not just for 33 months, but apart from any further change in North Carolina law or action by Congress, he's free and clear, even as of today, apart from any further change in North Carolina law. If you ignore those later two statutes, he would be, yes. But North Carolina... If you want to put it in terms of ignoring, that's fine. I'll accept that. But as I put it, apart from any further change in North Carolina law. But the North Carolina General Assembly saw it differently and decided you should not in December of 1995. Congress didn't do anything. Congress, back in 1986 when it created Section 921... Congress hasn't done anything since 93. No, no. But in passing Section 921, Congress intentionally overruled the Dickerson Supreme Court decision, which I believe came through this court, where the Supreme Court had held that federal law controls the federal firearm statutes. Federal law determines what is a conviction. And Congress, according to a number of courts, including the Supreme Court, added Section 921, particularly the first sentence, to make certain that state law controlled. And that's what this case is really about. How does the North Carolina General Assembly determine whether these convictions are sufficient under federal law? And particularly in light of the first sentence of 921, which says that state law does control. The position taken by the defendant would make a nullity of that first sentence in Section 921. It would require courts to apply part of state law, namely a part that was repealed 20 years ago in 1995. And that seems to be contrary to Congress's intent in that first sentence in 921. And all through the history of the cases in this court going back 25 years, there is an intent to consider all of the law, all of the state's law. And McLean, in 1990, the court said that you must look to the whole of North Carolina law. And it contained this sentence, which is very pertinent even today. We therefore hold that the North Carolina Felony Firearms Act expressly provides the circumstances under which a person may not ship, transport, possess, or receive firearms as required under Section 921-820. And you cited that case, McLean, again in support in both Hairston and Brady, the two unpublished cases that are issued here and relied upon the district court. Then in O'Neill in 1999, the court said that you must consider the entire body of state law in determining when firearms rights were restored. And in Clark in 1993, you stated that convictions are not excluded until state law effectively restores firearms rights. And Mr. Burleson's rights were only temporarily restored for 33 months. They were retroactively stripped in 1995. So it was not an effective restoration of rights as required under Clark. And these principles were all reaffirmed in 2010 and 2011 in your cases in decisions in Hairston and in Brady. And you cite McLean and you cite Clark. The court should stick with Hairston and Brady and follow those decisions because they're persuasive. They deal with these same facts we have here. They deal with the same statutes, 921. They deal with the 1995 North Carolina Firearms Act. They deal with the 2004 North Carolina Act. And they're unanimous opinions. There's no dissent in either one. They're consistent with all these prior Fourth Circuit cases by considering the entirety and whole of North Carolina law. And in Hairston, the court stated that this retroactive stripping issue of previously restored rights was a matter of first impression for the court. And the defendant relies upon Haynes. And in Hairston, the court said that issue's never come up before. And O'Neill in footnote six, the court explained, this was in 1999, that you never had the opportunity to decide this issue. And then cited Haynes as being, maybe perhaps coming close, but not quite there because the West Virginia statute, that issue was prospective only and never stripped Haynes of any restored firearms rights. McQueen, the other case that's relied upon by the defendant, was a 2006 case where the defendant appeals some issues that are not relevant here. The district court denied a 924E enhancement. And the government cross-appealed and made the exact same arguments that we are making here today and made in Hairston. But it made an alternative argument that since the pre-1995 Act applied, the North Carolina Act, the defendant had not gone five years without committing another felony, so his firearm rights were never effectively restored. And the court cited the case on that basis. So McQueen never reached this issue in 2006. And the court was absolutely correct in Hairston that it was a matter of first impression. And that's why Hairston and Brady are so significant here, because they're the only rulings this court has made on this question. Counsel, I agree that our unpublished decisions maybe have muddied the water a little bit. But there are all these circuits out there, right, reading the same text and saying the text clearly points to the reading that petitioner is offering up. And not only that, they all cite us for that proposition. They all cite Haynes. I mean, everybody else in the world seems to think Haynes has decided this question. So we're in this really weird position, right, where there seems to be, and I mean, I'm looking at Haynes, and it looks like it decided the question. So there's Haynes, and then there's all these other circuits citing to Haynes as deciding the question, putting us in uniformity with the kind of vast majority of the circuits. But then, I mean, I agree with you that we've got this line in Hairston saying this is a question of first impression. And, I mean, I guess this is just a question about what we do with this unpublished authority. I don't know that that's a question. How do I reconcile all of this? That's my question. Yes, Your Honor. I believe there are three circuits, disagreeing circuits, that do cite Haynes being in a court. But the problem is they don't cite O'Neill and don't examine footnote six in O'Neill, where the court explains several years after Haynes that it's never addressed this issue of subsequent legislation that retroactively strips previously restored firearms rights. And then cites Haynes and points out that case did employ the law in effect when the rights were restored, because the later West Virginia law was prospective only and did not strip those rights. So I think those courts didn't continue their Haynes research enough and note that explanation in the footnote in O'Neill. And I think, for that respect, they're wrong. I think they're wrong in several other aspects, too, because they don't look at the whole of North Carolina laws as court has instructed us to do for so long. And they concentrate the grammar, as Mr. King just did, in one phrase over the objective of the entirety of Section 921, which is to give predominance to the state law interpretation of what is a crime punishable by more than one year in prison. And these other cases preceded Hairston and Brady, in some cases by 10 years. They were out there. The government cited them, acknowledged them in its Hairston brief, but also done the same thing in McQueen. And these cases were presumably considered by the court and rejected. It's just when the object of a statute is so clear as 921 is, it's the object that is more important than part of one's sentence or any grammatical rule or analysis. To do that means to ignore that first sentence. And in a later case by the 7th Circuit, Anbach decision, which Judge Easterbrook wrote Buckmeyer in 2009, the court noted that this circuit had always considered that the second sentence of 921 was to be controlled by the first sentence, the directive, the state law of control. And, of course, in the 7th Circuit, they don't do that. They are one of these anti-mouse trapping venues where if the certificate, there is a certificate, and it doesn't refer to a restriction on firearms, then the statutes don't matter whether they're retroactive, prospective, or whenever they were passed. They just ignore them. Can I ask you just quickly another sort of separate question? As I understand your brief, I mean, this is basically your argument under Strickland as well, right? There's no prejudice under Strickland because the argument is no good on the merits. It's basically the same argument. You don't have some separate argument under Strickland that you've raised in your brief? No, Your Honor. It would have been pointless. And we do not concede in effectiveness as the defendants claim. It's just under Strickland if the defendant cannot prove prejudice, the court does not have to examine the first problem. That is the law. And that's merely what we're saying. We don't concede that counsel was ineffective because it would have been pointless for him to raise these arguments because the court But the whole thing rises or falls on how we read the statute. That's the only question in this case. It does, Your Honor. And I would just urge the court to adhere to Harrison and Brady because even though they are unpublished, every unpublished opinion by this circuit has the warning up from the first line that unpublished opinions are not binding precedent. There's good reason for that. There certainly is, Your Honor. Let me ask you. Imagine hypothetically that in the last week before the law changed, a defendant like Mr. Burleson owns a firearm at home and is storing it in his home. And the law takes effect. Change takes effect. The firearm is still in his home. And a week later, let's just say hypothetically his son gets in some trouble or something and the police get a search warrant to search for some contraband related to the son. They come in with the search warrant and they find the weapon in Mr. Burleson's bed. And there's no dispute. It's Mr. Burleson's weapon. He's had it for years. It's been right there in the bedroom. Is your argument exactly the same? Assuming he gets prosecuted now federally a week after the change in the law. Let's make it even better. He's in Las Vegas the whole time. Gun's at home. But he's in Las Vegas being lucky, being unlucky at home. He comes home to a search party in his home. Is the case exactly the same as it is here? Is my case exactly the same as it is here? Technically, it would be for the government, Your Honor. Well, you didn't say technically. Well, because you didn't. You made the same argument. You still have prosecutorial discretion. Well, apparently. Sometimes it exists and sometimes it doesn't. Well, here it is. Talk about prosecutorial discretion. But beside that, that's your business, not mine. But you're saying basically the case is exactly the same. It's a retroactive statute. He's an armed career criminal. The morning after the statute takes effect. For a weapon that's been sitting in his house for two years. Technically, it would be, Your Honor. I appreciate it. I mean, that's what the North Carolina General Assembly said. It said in both the 95-2004 Act that they apply the felonies before, upon, or after a decent performance. And North Carolina can police that change by prosecuting people who violate their law. But it's federal law that controls it. We do take into account, of course, to see whether or not the state has restored the rights. But in terms of applying the statute, it's a federal analysis. It is, Your Honor. But going back to 922G and to 924E, the definition of a crime punishable by more than one year of imprisonment, we go to state law, which makes that determination. And part of that is when did they restore the firearms rights. That's right. Unless clause comes in. But it's focused on restoration. The second sentence is, yes, Your Honor. Exactly. It is. Because it has been written that, you know, you're a prohibited person as long as at the time you possessed, you could not in your state possess a weapon. That would be easy to do, right? Congress, you assume, knows how to write statutes. They have some grammarians up there, I think, sometimes. Don't say they could have written it that way. Made it clear. Well, Your Honor, instead of they could have said, use the past tense, had rights restored, has ever had rights restored. I think the President is so clear that at the time you possessed, whether or not you were prohibited, you know, in other words, the restoration, if you had a restoration, if at the time you possessed you could not possess the weapon, then you were a prohibited person under the federal law. But it says, instead, the unless clause goes to the document or the act of restoration. See whether or not that had any prohibitive language. And if it didn't, that seems to be the focus in Haynes' sentence. Well, Your Honor, that's almost getting into the anti-mousetrapping circuit's logic. They say that second sentence applies where the defendant receives a document, and you disregard the first sentence if he has. If he didn't get a document and he followed the first sentence, that's basically the way the Seventh Circuit is. So we've rejected in the Fourth Circuit that line of logic, starting with McLean 25 years ago. We construe the second sentence and the first sentence together, as interpreted by the whole, the entirety of state law. If I may make one point quickly, too. So how does Haynes come to his conclusion, then, about the dual application of the first and second sentence in the Senate? It doesn't have to change the law. It doesn't matter. It examined the, I believe it was, 94 West Virginia Act, and if they were going to look at the certificate only in that case, why examine that 94 Act at all? Well, they examined it and said it's not retroactive, and therefore his rights were never lost. That's how they decided that. Mr. King indicated that the certificate in this case had nothing about firearms. We have been unable to find the original certificate. The certificate appears on page 120 of the appendix. It's a present-day certification from the parole office in Raleigh. It's not an actual piece of paper that was given to Mr. Burleson. It's not worded as it was then. That document does not exist in the government offices, and under the state law they were required to file a copy with the county where he was prosecuted, and the government has searched McDonald County in North Carolina, and there's no copy of it there, which leads me to show how difficult the defendant's position, how impractical it would be to implement, because when you have these earlier convictions, there are no records. There's no database of when civil rights were restored. As I mentioned before, in 1975, defendants had to go into court in North Carolina, into superior court, and have their rights restored. Most courts don't have those records from 45 years ago. How is a probation officer, a defense attorney, the government, a court, to determine if civil rights were restored and firearms were restored simultaneously pre-'75? We had enough problems figuring it in Mr. Burleson's case, and I think what it would result in is that any conviction, certainly before 75, probation officers and courts would just throw up their hands and not use them, because it's too cumbersome to go back and research this, and North Carolina law changed too frequently on this matter, and it will also generate an enormous number of 2255s, not necessarily in the 922G area, but there are a lot of these old convictions out there having been used under the Armed Career Criminal Act, and that will create an awful lot of work. So there are consequences from accepting this position and disregarding what the court thought through thoroughly in Hairston's writing. Thank you very much. Thank you so much. Mr. King? Your Honors, a number of points to respond to my friend's argument on the other side. I'll start with one of the last points that Mr. Hobgood made, which is that the rule that we advocate for here would somehow be difficult to administer. I think it's exactly the opposite. If this court follows the rule in McQueen, where a federal court applying sections 921 and 922G just looks to how many felony convictions do you have since you were last allowed to possess firearms under state law, right? It's a very simple analysis. Here the answer is zero, and in any case, not a difficult thing to do. I would note about the certificate, that the certificate at Appendix 120 that the United States now seems to question in some way, they did not question in their brief, and in fact they put it in the record in the district court without questioning it. So I think there's no basis to question the accuracy of that certificate. And as we noted in a footnote in our reply brief, and we'd be happy to put before the court, this is outside the record, the North Carolina Department of Public Safety makes these certificates, duplicates of them, available on request. We have an email here from the director of that department, which we'd be happy to lodge with the court if you'd like to see it, the process of how those duplicates are made available. 28J is the process for that. Well, we'd be happy to do it. We were concerned that wasn't subsequent authority. Okay. In any event, look, on the purpose of Section 921, to the extent it's relevant, to the extent the text is not crystal clear here, which we believe that it is, you can find the purpose in the Supreme Court's Logan decision from 2007, which indicates that the purpose of Section 921 is to give effect to state laws, not generally, but to state laws providing dispensation and relieving offenders from the consequences of their prior convictions. So it's, in effect, a one-way ratchet. The purpose of Section 921 is not to give effect to state law, just whatever it happens to say at any time, but to look at what such restoration says. I think a way you can confirm that is to look at the other terms in Section 921, expunge, pardon, set aside. Those are all things that relieve the offender from the consequences of his or her prior conduct. So I think that's additional contextual evidence of purpose. Now, the government says that our reading of the statute would render the first sentence a nullity. Well, of course, that's not the view that the Fifth Circuit or the Seventh Circuit or the Eighth Circuit or the Ninth Circuit or the Tenth Circuit has taken. The first sentence of Section 921 is not a nullity in any of those circuits. And that's so because what constitutes a conviction shall be defined under state law. It's true, Mr. Burleson has many convictions. But what we need to find out here is, A, whether his rights have been restored. It's undisputed that they were. And, B, whether such restoration expressly provides that he may not possess firearms. So I think there's nothing at all about our interpretation that would render the first sentence a nullity. That's just simply incorrect. As the Supreme Court said in Caron and in Beecham and Judge Gregory, as you indicated here today, federal law governs the analysis and the application of that unless clause in the second sentence of Section 921. That's not a state law inquiry. On Hairston and Brady, the unpublished decisions, we think that Haynes obviates the need to go to those and certainly the directly on point precedent from other circuits. But if you needed reasons to go against those, I'll give you a couple very briefly. First, in Hairston, the court was not fully presented with the issues. It's true, there is a one or a two-sentence footnote in the government's brief in the cases from other circuits. There's a very brief passing mention to Haynes, but there's no discussion of it. And I think more importantly, if you look to the appellant's briefs in Hairston, you won't find any substantive discussion of Haynes, notwithstanding the fact that Haynes speaks directly to these issues, whether in a holding or in recent dicta. Nor will you find in the appellant's briefs any discussion or analysis of the cases from other circuits, which are directly on point. So I think the court wasn't really given by the parties a fair chance to reach all of these issues and hash through them in Hairston. Second, I would note that Hairston was decided in 2010, and it relied exclusively on the Seventh Circuit's Melvin decision. Now, my friend has just indicated up here that this court has disagreed for 25 years with the Seventh Circuit's approach to this statute. So that in itself is probably a sufficient basis to not follow Hairston. But in addition, in 2012, two years after Hairston was decided, the Seventh Circuit in Adams adopted our interpretation of how Section 921 works. I guess I would add a third reason to disregard Hairston. The rulings in Hairston and Melvin are inconsistent with the plain language of Section 921. They don't parse its text. You can look at them. The Brady decision has just a sentence that the court, sua sponte, looked at this issue. I see that my time has expired. Yes. If there's nothing further, we ask that the judgment be reversed. Thank you so much, Mr. King. Mr. King, I'll also note that your court appointment, likewise, was much gratitude. We thank you for that. We appreciate that. We couldn't get our work done without it. It means a whole lot to my access to justice as well. And also, Mr. Hoffman, we note your able representation in the United States. We will come down with counsel and proceed to our last case.
judges: Roger L. Gregory, Pamela A. Harris, Andre M. Davis